THE UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | CASE NO.: 5:15CR186 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Troy B. Schurring, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Pending before the Court is whether Attorney Craig Weintraub should be found in contempt of court for his actions on November 3, 2015, during the sentencing hearing for Defendant Troy B. Schurring. The Court now resolves that issue.

**I. Factual Background**

Immediately after the conclusion of the sentencing hearing, the Court received information from Deputy United States Marshal Jeff Hall that Attorney Weintraub may have engaged in unprofessional actions during the hearing, but outside the hearing of the undersigned. Three days after the sentencing hearing, the Court noticed a status conference and attempted to resolve the matter in an informal manner in its conference room. After a motion was granted to a scheduling conflict belonging to Attorney Weintraub, the status conference was held on November 10, 2015. At that time, the Court inquired as to whether Attorney Weintraub recalled any unprofessional conduct on his behalf during the hearing. Specifically, the Court began that conference by noting:

> During the course of the sentencing hearing, it appears that Mr. Weintraub made certain statements or remarks to Mr. Sullivan that could not be heard by the court. Those remarks were made in my presence, and I want you,

> Mr. Weintraub, to state verbatim the nature of the comments that were made to Mr. Sullivan during the course of the sentencing hearing.

Doc. 43 at 3.  Attorney Weintraub responded: "I don't recall specifically, other than I think the one word that I used was 'ass.' But beyond that -- I don't know. I may have repeated it a couple of times." *Id.*  When Attorney Weintraub was reminded of his duty of candor, he reiterated: "And I am being honest with you, Judge. I mean, I do remember calling him an 'ass.' That was in response to what I believe to be an ad hominem attack to me." *Id.* at 4.  When asked for his recollection of the events, Assistant United States Attorney Michael Sullivan indicated that Attorney Weintraub's first comment was to ask whether Sullivan was calling him a liar.  AUSA Sullivan then heard him say "'Unfucking believable.' 'Fuck you.' And I recall specifically, 'Fucking piece of shit.'"  *Id.* at 7.  When asked whether he made those comments, Attorney Weintraub first noted: "Now that he mentioned the Judge Polster comment, I did call him a liar. I do remember that." *Id.*  Attorney Weintraub then denied making any other remarks to AUSA Sullivan.

> THE COURT: You never used the word "fuck" directed to Mr. Sullivan in my courtroom? Is that what you're telling me?
>
> MR. WEINTRAUB: I don't believe that I did.

*Id.* at 7-8.

> Attorney Weintraub later recounted his behavior following the hearing:
>
> When I left the courthouse, I went back to the office, and I was upset over my conduct that I acted unprofessionally with a colleague. That should never have happened. Really, it's totally inappropriate. I get it. I mean, 100 percent. I should be admonished for what happened. I agree wholeheartedly. I was upset for probably a solid day over this. I went home and talked to my wife. And I said, 'This isn't me. I don't know why I let it get the best of me and didn't maintain my composure.'
>
> …

2

> I hope you do not feel that it's necessary to go any further, and I apologize to Mr. Sullivan. I've known him a long time. And it's just we've never had this situation.

*Id.* at 12-13.

Based upon that conference, the Court had concerns over Attorney Weintraub's memory of the events. During the hearing, Attorney Weintraub also indicated that he felt it unfair that he should have to respond to any such allegations without some formal process.

> Judge, I was under the impression -- let me get this straight. Because I was under the impression when I got a notice for a status that this had to do with the Schuuring matter.
>
> Now, I asked this court three times what this is about. And I did not receive an answer from anybody. I asked Mr. Sullivan, "What is this about?" Obviously, he knew what this was about, and he said he had no idea. So it's clear -- hang on. We're making a record.
>
> It's clear that I was brought in here for an ambush. There is no doubt. Now, I have never been ambushed in my entire career. And I am not going to tolerate it, with all due respect, to you as a federal judge. I will not tolerate it. I am entitled to notice. I am entitled to due process.
>
> And if I am being set up here for some sort of a perjury charge, some sort of a contempt proceeding, I think that I deserve the respect to have been notified prior to coming here and then being told on the record, being cross-examined by a federal judge as to whether or not I am telling the truth about what I said or what I believe I said. That is completely unfair.
>
> Now, nothing happened to impact the administration of justice in your room.

*Id.* at 8-9. Contrary to Attorney Weintraub's unfounded assertion, AUSA Sullivan was provided no information about the hearing. Rather, the Court deliberately left the issue open in an attempt to ensure an honest response to the Court's inquiry.

However, as a result of Attorney Weintraub's request for a more formal process, the Court ordered Attorney Weintraub to show cause why he should not be held in

3

contempt for his use of profanity during the sentencing hearing. Moreover, while undecided on whether the matter should proceed as a criminal contempt, the Court granted Attorney Weintraub all of the procedures and protections of such a proceeding. The Court then conducted an evidentiary hearing on January 19, 2016, and accepted post-hearing briefs incorporating the testimony from the parties.

## II. Evidentiary Hearing

During the hearing, the Court first heard testimony from Deputy United States Marshal Jeff Hall. Deputy Hall had escorted Defendant Schuuring to the sentencing hearing and was serving as security during the hearing. Deputy Hall indicated that he was sitting near the defense table and that during a presentation by AUSA Sullivan, Deputy Hall heard Attorney Weintraub call AUSA Sullivan a "fucking asshole" twice. Deputy Hall also indicated that he did not believe that Attorney Weintraub's statement disrupted or distracted AUSA Sullivan. Moreover, Deputy Hall noted during cross-examination that he spoke to the undersigned's Courtroom Deputy about these comments immediately after the conclusion of the hearing. Cross-examination also revealed that Deputy Hall wrote an official report about the incident on November 19, 2015 at the direction of his supervisor and the Court.

Next, the Court heard testimony from Canton Police Office Brian Allen. Officer Allen was present at the sentencing serving as the case agent. As such, he was seated at the same table as AUSA Sullivan. When asked if he heard Attorney Weintraub direct any statements to AUSA Sullivan, Officer Allen responded: "I heard several statements, one being 'are you calling me a liar?' Another 'are you fucking serious?' Another was he called him 'a piece of shit.'" Doc. 47 at 20. Officer Allen also noted that Attorney

4

Weintraub's statements continued after the conclusion of the sentencing hearing in the elevator in the courthouse: "the last thing he said to Mr. Sullivan before I got off the elevator is 'you are a fucking asshole.'" *Id.* at 22. During cross-examination, Officer Allen indicated Attorney Weintraub's statements diverted his attention from AUSA Sullivan's arguments.

Next, the Government presented the testimony of FBI Special Agent Paul Pape. Agent Pape attended the sentencing hearing because he believed that there was a possibility that he would be called upon to testify regarding certain matters. Agent Pape indicated that he was in the second row of the gallery on the prosecution side of the courtroom, one seat from the aisle. Agent Pape testified that he viewed Attorney Weintraub become agitated during AUSA Sullivan's argument. Agent Pape noted that he could not hear the words used by Attorney Weintraub. However, Agent Pape stated that it was clear from viewing Attorney Weintraub that he was cursing at AUSA Sullivan. Upon further questioning, Agent Pape stated that Attorney Weintraub said "'you are a fucking asshole.' He said 'you are a piece of shit,' and he said 'you are fucking kidding me.'" *Id.* at 39-40. "That was crystal clear from what I was seeing, and it was further exemplified on the elevator when he called Mr. Sullivan 'a fucking asshole.'" *Id.* at 40.

Finally, the Court heard testimony from AUSA Sullivan. AUSA Sullivan recalled that the following occurred while he was presenting argument to the Court:

> I heard Mr. Weintraub say 'are you calling me a liar?' I looked over to him, and frankly, I thought that he was kidding because I have known him for almost 20 years. I consider myself friendly with Mr. Weintraub, so I thought that he was actually kidding, so I looked at him, and I could tell from the look in his eyes he was not kidding because then he repeated, 'are you calling me a liar?' And it took me aback.
>
> …

5

> I was mid-sentence. As a matter of fact, his comment actually caused me to change because the next comment I made to Judge Adams was, to be clear, that's only my experience. There are other people that prosecute these kind of cases in Cleveland, that my experience I have never had Judge Polster give a mandatory minimum in one of my cases. That was actually -- I made that comment in response to Mr. Weintraub.
>
> …
>
> And so it is clear, I was trying to talk, and I was trying to listen to Judge Adams simultaneously, hearing Mr. Weintraub. So I don't know that I can tell you everything that was said. I know what I heard. I know that I certainly heard say 'unfucking believable.' I know I heard him say 'fuck you.' I know, at least on one occasion, say 'you are a fucking piece of shit,' and once or twice I know I heard that. And I could see out of the corner of my eye it appeared as though he was facing – I mean, I didn't look in his direction, but I could feel him staring and see that he had moved -- from the corner, I could see him moving his position. So he was facing me and directing his comments, but again, I can't tell you every single comment, but I know those were said, there were others, but I was trying to listen to Judge Adams as well.

Doc. 47 at 44-46. During cross-examination, AUSA Sullivan was asked whether he was able to make all of his arguments to the Court and responded: "I imagine. I mean, I was distracted, but I imagine I made all the points." *Id.* at 50.

### III. Legal Standard

18 U.S.C. § 401 provides that this Court has the "power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as-- (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice[.]"  To convict someone of criminal contempt in violation of § 401(1), the Government must establish beyond a reasonable doubt: "(1) misbehavior of a person, (2) which is in or near to the presence of the Court, (3) which obstructs the administration of justice, and (4) which is committed with the required degree of criminal intent." *United States v. Warlick*, 742 F.2d 113, 115 (4th Cir.1984).  In this context,

6

criminal contempt generally requires more than just "[t]he vehemence of the language." *In re Little*, 404 U.S. 553, 555 (1972). However, "[c]ourts repeatedly have found that offensive words directed at the court may form the basis for a contempt charge. As the Second Circuit has said, 'there is an implicit standing order that parties, counsel, and courtroom attendees refrain from direct and egregious insults to judicial authority.'" *United States v. Marshall*, 371 F.3d 42, 48 (2d Cir. 2004). *See also In re Sealed Case*, 627 F.3d 1235, 1238 (D.C.Cir. 2010); *Gordon v. United States*, 592 F.2d 1215, 1217 (1st Cir. 1979)." *United States v. Peoples*, 698 F.3d 185, 190 (4th Cir. 2012). Moreover, this Court's local rules provide that "[a]ll Attorneys admitted to practice in this Court shall be bound by the ethical standards of the Ohio Rules of Professional Conduct adopted by the Supreme Court of the State of Ohio, so far as they are not inconsistent with federal law." Loc. Crim. R. 57.7(a). In turn, Ohio Rule of Professional Conduct 3.5(a)(6) provides that a "lawyer shall not … engage in undignified or discourteous conduct that is degrading to a tribunal."

**IV. Analysis**

Initially, the Court would note that the overwhelming evidence proves that Attorney Weintraub misbehaved in the presence of the court. Every witness was consistent in stating that Attorney Weintraub directed profane statements to AUSA Sullivan while AUSA Sullivan was addressing the Court and immediately thereafter in the courthouse elevator. Moreover, there can be no question based on the record that Attorney Weintraub intentionally directed those comments to AUSA Sullivan. As such, the only element remaining for the Court's consideration is whether those actions obstructed the administration of justice.

Herein, Attorney Weintraub asserts that he cannot be found in contempt because his actions did not in any manner obstruct the proceedings. The Court disagrees.

This Court notes that there is little guidance surrounding this element from courts within the Sixth Circuit. Other courts, however, have offered persuasive guidance.

> The phrase "obstructs the administration of justice" in § 401(1) lacks precise definition. The Supreme Court, however, has described the phrase as contemplating an "obstruction to the performance of judicial duty." *In re McConnell*, 370 U.S. 230, 234 (1962) (internal quotation marks omitted). We have added that it "requires ... some act that will interrupt the orderly process of the administration of justice, or thwart the judicial process." *Warlick*, 742 F.2d at 115–16.

*Peoples*, 698 F.3d at 190. "An outburst of foul language directed at the court is intolerable misbehavior in the courtroom and falls within the prohibition of section 401(1)[.]" *In re Sealed Case*, 627 F.3d 1235, 1238 (D.C.Cir. 2010). "Although the line between insult and obstruction is difficult to discern, there is a point at which mere words are so offensive and so unnecessary that their very utterance creates a delay which is an obstruction of justice." *Gordon v. United States*, 592 F.2d 1215, 1217 (1st Cir. 1979).

In the instant matter, the Court need not conclude that the language used by Attorney Weintraub warrants a contempt finding standing alone.[1] Rather, the record is clear that an obstruction or more accurately, multiple obstructions, however slight, occurred. First, AUSA Sullivan actually *responded* to Attorney Weintraub's actions. "As a matter of fact, his comment actually **caused me to change** because the next comment I made" was in response to the comments made by Attorney Weintraub. In addition to altering the presentation made by AUSA Sullivan, Attorney Weintraub's

---

[1] The Court would note that the repeated use of profane language directed at an Assistant United States Attorney while he attempts to present to the Court would be sufficient for such a finding.

8

conduct also affected court personnel.  In upholding a contempt conviction, the Fourth Circuit in *Peoples* noted:

> "Judge Conrad concluded that Peoples' outburst impeded the performance of judicial duties in two ways. First, the judge found that Peoples' outburst caused Judge Currie and court personnel to spend time participating in the subsequent investigation of the outburst. Second, Judge Conrad found that when Peoples' outburst occurred it required court personnel to cease their regular duties and tend to the outburst."

*Peoples*, 698 F.3d at 190.[2]  The facts herein present similar issues.  Initially, Deputy Hall was delayed from his normal duties because he was required to approach the courtroom deputy and explain the conduct that he had observed.  Deputy Hall was later taken away from his regular duties to fill out a report related to the event.  Moreover, the courtroom deputy was delayed from leaving the courtroom due to Deputy Hall relaying to her what he had observed during the hearing.  While minor, both Deputy Hall and the courtroom deputy were obstructed as contemplated under § 401.  Coupled with the repeated use of profane language that continued outside but near the presence of the Court, this obstruction is more than sufficient to support a conviction for contempt.

The question remains, however, whether given all of the circumstances herein the Court should exercise its authority to make a contempt finding.  As such, the Court must evaluate whether the conduct warrants criminal contempt, whether it warrants civil contempt, or whether a simple public admonishment is a sufficient deterrent.

The Supreme Court has explained:

> "Criminal contempt is a crime in the ordinary sense," *Bloom v. Illinois*, 391 U.S. 194, 201 (1968), and "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings," *Hicks v. Feiock*, 485 U.S. 624, 632 (1988). *See In re Bradley*, 318 U.S. 50 (1943) (double jeopardy); *Cooke v.*

---

[2] The Court would note that the outburst decribed in *Peoples* occurred following the adjournment of a proceeding, while the conduct herein occurred *during* an ongoing hearing.

9

> *United States*, 267 U.S. 517, 537 (1925) (rights to notice of charges, assistance of counsel, summary process, and to present a defense); *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444 (1911) (privilege against self-incrimination, right to proof beyond a reasonable doubt). … In contrast, civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required.

*International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 826–27, (1994) (footnote omitted).

"Although the procedural contours of the two forms of contempt are well established, the distinguishing characteristics of civil versus criminal contempts are somewhat less clear." *Id.* at 827 (footnote omitted). The Sixth Circuit has provided some guidance on this topic:

> The distinction between civil and criminal contempt lies in the purpose of the court's mandate. Civil contempt sanctions are designed to enforce compliance with court orders and to compensate injured parties for losses sustained. Criminal contempt sanctions, on the other hand, are imposed to vindicate the authority of the court by punishing past acts of disobedience. Accordingly, a fine that is payable to the complainant as compensation for damages caused by the contemnor's noncompliance or that is contingent upon performing the act required by the court's order is civil in nature, while an unconditionally payable fine is criminal.

*Downey v. Clauder*, 30 F.3d 681, 685 (6th Cir. 1994) (internal quotations and citations omitted).

A colleague in the Eastern District of Michigan has also explained the power the Court has beyond contempt:

> It has long been recognized that federal courts have the inherent power to discipline attorneys who violate their orders, separate and apart from their authority under the contempt statutes. *See, e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44 (1991); *Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 512 (1873); *Smothers*, 322 F.3d at 442; *Jones*, 36 F.Supp.2d at 1124–26.

> The Supreme Court has explained: The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches. "If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls 'the judicial power of the United States' would be a mere mockery." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911).*Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 796 (1987). Although the range of options is perhaps more limited here than in a civil case, where such measures as fee-shifting and issue preclusion may be employed, the Court nonetheless possesses "the flexibility to equitably tailor punishments that appropriately fit the conduct" at issue here. *Smothers*, 322 F.3d at 442.

*United States v. Koubriti*, 305 F. Supp. 2d 723, 757 (E.D. Mich. 2003). *Koubriti* then continued by noting the possible available sanctions:

> In *Smothers*, *supra*, the Sixth Circuit suggested a non-exclusive list of sanctions short of contempt that a court might employ. First, as a general matter, the Court indicated that "progressive discipline" is the preferred approach, so as to identify the least severe and punitive, yet still effective means to respond to a transgression. Smothers, 322 F.3d at 442. Thus, an initial incident might warrant "a lecture from the court," or some similar form of warning. 322 F.3d at 442. … The Sixth Circuit next suggested that a court might require "[a]n apology on the record." [*Id.*] … The next category of sanction identified in Smothers is some form of attorney discipline, either imposed by the court itself or addressed through a reference to the appropriate bar association. [*Id.*] at 443.

*Koubriti,* 305 F.Supp.2d at 757-761.

Given the totality of the circumstances herein, the Court believes that it must equitably tailor a punishment that is appropriate to the conduct herein.  As detailed above, the Court believes that there is sufficient evidence to make a finding of criminal contempt.  However, the Court also acknowledges that any obstruction of the proceedings resulting from Attorney Weintraub's conduct was minimal.  The undersigned did not hear the statements, nor were they loud enough to have been heard by the court reporter and added to the record.  Additionally, AUSA Sullivan indicated that while he heard the

11

statements, he was still able to make his full presentation without issue.  As a result, the Court does not believe the conduct warrants creating a permanent criminal record for Attorney Weintraub.

Furthermore, as the events were completed prior to the Court having knowledge of them, civil contempt does not appear to be a viable option.  The Court, therefore, examines a sanction more narrowly tailored to the specific facts herein.

There can be no doubt that Attorney Weintraub's conduct violated both the rules of the courtroom and professional standards.  Setting aside the use of profane language, Attorney Weintraub directly addressed AUSA Sullivan while AUSA Sullivan was attempting to address the Court.  Next, add in that he addressed AUSA Sullivan in a profane manner on repeated occasions and there can be no excusing the conduct. Finally, while there were attempts to describe this as a momentary outburst, the activities continued after the conclusion of the hearing.  Attorney Weintraub continued to direct profane statements to AUSA Sullivan all the way to the courthouse elevator and throughout the time they were in the elevator.

Attorney Weintraub's actions serve to diminish the profession.  Whatever stress he may have been under, he allowed it to manifest itself in a decidedly unprofessional manner *during* a sentencing hearing.  The Court would note, however, that it has not previously had such an experience with Attorney Weintraub, nor is it aware of him acting in a similar manner before any other judicial officer.  Moreover, while not the most compelling apology the Court has heard, Attorney Weintraub has apologized to both the Court during the initial status conference and to AUSA Sullivan.  As such, there are some mitigating factors for the Court to consider.

After careful consideration, the Court believes that a public admonishment along with reporting to the appropriate disciplinary authority is the appropriate sanction herein. Accordingly, Attorney Craig Weintraub is hereby formally and publicly admonished for his conduct during and immediately following the sentencing hearing held on November 3, 2015. A copy of this opinion shall be forwarded to Ohio's Office of Disciplinary Counsel to allow that office to determine whether any further sanction should flow from the conduct and the open issue of whether Attorney Weintraub was candid to the Court in his recollection of the events of November 3, 2015.

IT IS SO ORDERED.


May 6, 2016                    */s/ Judge John R. Adams*
                               JUDGE JOHN R. ADAMS
                               UNITED STATES DISTRICT COURT